IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, | ) | CIVIL NO. 06-00246 SOM/KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING MOTION FOR |
| vs. | ) | SUMMARY JUDGMENT |
| | ) | |
| MARK STEPHEN CHESLER and | ) | |
| ANGELA CHESLER, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

I.     INTRODUCTION.

This case involves an insurance coverage dispute. Plaintiff Allstate Insurance Company filed this declaratory judgment action, asking this court to determine that it has no duty under a homeowner's insurance policy to defend or indemnify Mark and Angela Chesler with respect to claims brought by their neighbors in a state court action. Because the state court complaint does not allege claims for which there is any possibility of coverage under the homeowner's policy, Allstate has no duty to defend or indemnify the Cheslers under the policy.

II.    BACKGROUND FACTS.

The facts of this case are undisputed. Philip S. Mosher and Marie E. Aguilar ("Neighbors") own a house on Lot 91 of the Hualalai Colony Subdivision on the Big Island of Hawaii. See Complaint ¶ 1 (Aug. 11, 2005), filed in the Third Circuit

Court of the State of Hawaii ("State Court Complaint") (Ex. 3). When the Cheslers, who had purchased a neighboring lot, Lot 93, constructed their house, the Neighbors objected to the design. The Neighbors eventually filed suit against the Cheslers, alleging that, before building their home, the Cheslers had taken measurements from the wrong point, resulting in a home one foot higher than allowed by the community association. State Court Complaint ¶¶ 8-9; Recorded Statement of Mark Chesler (Jan. 18, 2006) (attached as Ex. 2).[1] This height allegedly "unreasonably interferes with the light, air, and view of Plaintiffs' Lot 91." State Court Complaint ¶ 14. The Neighbors' State Court Complaint seeks to have the Cheslers' home "brought into compliance with the height limitation" and claims "damages that are ancillary" to such compliance. Id. ¶¶ 18-19. The State Court Complaint also alleges that the Neighbors have "suffered the loss of value to [their] residence." Id. ¶ 21.

In their State Court Complaint, the Neighbors also name the community association and its design committee, contending that they wrongfully approved the Cheslers' design and failed to require the Cheslers to apply the correct measuring point.

---

[1]Because the recorded statement could be presented in an admissible form at trial, such as live testimony by Mark Chesler, this court may consider its contents for purposes of the summary judgment motion. See Fraser v. Goodale, 342 F.3d 1032, 1037 (9th Cir. 2003).

The parties agree that, at all relevant times, the Cheslers were insured under a homeowner's insurance policy, Number 9 07 851641 08/25, issued by Allstate Insurance Company ("Homeowner's Policy"), a copy of which is attached as Exhibit 1 to Plaintiff's Separate and Concise Statement of Material Facts in Support of its Motion for Summary Judgment. The Family Liability Protection section of the Homeowner's Policy, Coverage X, states that "**Allstate** will pay damages which an **insured** person becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy." The policy defines "property damage" as "physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction." Homeowner's Policy, Definitions. The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**."

Id.

III.     SUMMARY JUDGMENT STANDARD.

　　　　Summary judgment shall be granted when

> the pleadings, depositions, answers to
> interrogatories, and admissions on file,
> together with the affidavits, if any, show
> that there is no genuine issue as to any

    material fact and that the moving party is
    entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see also Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006); Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Accordingly, "[o]nly admissible evidence may be considered in deciding a motion for summary judgment."  Miller, 454 F.3d at 988.

   Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987.  "A fact is material if it could affect the outcome of the suit under the governing substantive law."  Miller, 454 F.3d at 987.

When the moving party bears the burden of proof at trial, the moving party carries its initial burden on a motion for summary judgment when it "'come[s] forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.'" Id. (quoting C.A.R. Trans. Brokerage Co. v. Darden Rest., 213 F.3d 474, 480 (9th Cir. 2000)).

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." Miller, 454 F.3d at 988 (quotations and brackets omitted).

IV.   ALLSTATE HAS NO DUTY TO DEFEND OR INDEMNIFY THE CHESLERS.

This is a diversity action. See Complaint (May 5, 2006) ¶ 5. Federal courts sitting in diversity apply state substantive law and federal procedural law. See Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1090 (9th Cir. 2001). When interpreting state law, a federal court is bound by the decisions of a state's highest court. Ariz. Elec. Power Coop. v. Berkeley, 59 F.3d 988, 991 (9th Cir. 1995). In the absence of such a decision, federal courts attempt to predict how the highest state court would decide the issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes,

treatises, and restatements as guidance.  Id.; see also Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 944 (9th Cir. 2004) ("To the extent this case raises issues of first impression, our court, sitting in diversity, must use its best judgment to predict how the Hawaii Supreme Court would decide the issue." (quotation and brackets omitted)).

Under Hawaii law, general rules of contract construction apply to the interpretation of insurance contracts. Dawes v. First Ins. Co. of Haw., 77 Haw. 117, 121, 883 P.2d 38, 42 (1994).  Insurance policies must be read as a whole and construed in accordance with the plain meaning of its terms, unless it appears that a different meaning is intended.  Id. at 121, 883 P.2d at 42; First Ins. Co. of Haw. v. State, 66 Haw. 413, 423, 665 P.2d 648, 655 (Haw. 1983); see also Haw. Rev. Stat. § 431:10-237 (Michie 2004) ("[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy").

Because insurance contracts are contracts of adhesion, they must be construed liberally in favor of the insured, and any ambiguities must be resolved against the insurer.  Put another way, the rule is that policies are to be construed in accordance with the reasonable expectations of a layperson.  Dawes, 77 Haw. at 131, 883 P.2d at 42.

The burden is on the insured to establish coverage under an insurance policy. See Sentinel Ins. Co. v. First Ins. Co. of Haw., 76 Haw. 277, 291 n.13, 875 P.2d 894, 909 n.13 (1994) (as amended on grant of reconsideration). The insurer has the burden of establishing the applicability of an exclusion. See id. at 297, 875 P.2d at 914.

The duty to indemnify is owed "for any loss or injury which comes within the coverage provisions of the policy, provided it is not removed from coverage by a policy exclusion." Dairy Road Partners v. Island Ins., 92 Haw. 398, 413, 922 P.2d 93, 108 (2000). The obligation to defend an insured is broader than the duty to indemnify. The duty to defend arises when there is any potential or possibility for coverage. Sentinel, 76 Haw. at 287, 875 P.2d at 904. However, when the pleadings fail to allege any basis for recovery under an insurance policy, the insurer has no duty to defend. Pancakes of Haw. v. Pomare Props., 85 Haw. 286, 291, 944 P.2d 83, 88 (1997). In other words, for Allstate to obtain summary judgment on its duty to defend, Allstate must prove that it would be impossible for a claim in the underlying lawsuit to be covered by the Homeowner's Policy. See Dairy Road Partners, 92 Haw. at 412-13, 922 P.2d at 107-08.

In relevant part, the Cheslers' insurance policy states that "**Allstate** will pay damages which an **insured** person becomes

7

legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy." Homeowner's Policy, Coverage X. Allstate argues that it has no duty to defend or indemnify the Cheslers from the Neighbors' state-court claims, as those claims do not allege "property damage," which the policy defines as "physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction."[2] Homeowner's Policy, Definitions. The court agrees that Allstate has no duty, as the State Court Complaint does not allege any "property damage" claim.

The State Court Complaint alleges that, because the Cheslers' home exceeded the community association's height limitation, the Cheslers' home "unreasonably interferes with the light, air, and view of Plaintiffs' Lot 91." Id. ¶¶ 8-9, 14. This is not a claim involving physical injury to or destruction of tangible property.

This court finds Guelich v. American Protection Insurance Company, 772 P.2d 536 (Wash. Ct. App. 1989), instructive, as Guelich involved a situation similar to the one presented here. Guelich's neighbor claimed Guelich's house blocked the neighbor's view. Id. at 537. When the neighbor

---

[2]No party is asserting coverage based on "bodily injury."

8

sued, Guelich tendered the defense of the suit to his insurance carrier under an umbrella policy that insured "property damage," defined in the policy as "physical injury to tangible property." The Washington Court of Appeals ruled that the insurance company had no duty to defend Guelich from his neighbor's claims because "[l]oss of use of a view does not constitute property damage as defined in the . . . policy. The view obstruction suit does not allege physical injury to tangible property."

The Cheslers say that <u>Guelich</u> is distinguishable because the policy in <u>Guelich</u> insured "physical injury to tangible property," while the Homeowner's Policy here insures "physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction." The Cheslers argue that the underlying State Court Complaint pertains to "destruction of tangible property," not "physical injury to . . . tangible property." This argument is not supported by the allegations of the State Court Complaint.

"Hawaii adheres to the 'complaint allegation rule.'" <u>Burlington Ins. Co. v. Oceanic Design & Constr., Inc.</u>, 383 F.3d 940, 944 (9th Cir. 2004) (citing <u>Pancakes of Hawaii, Inc. v. Pomare Props. Corp.</u>, 85 Haw. 286, 994 P.2d 83 (Haw. Ct. App. 1997)). In that regard,

> The focus is on the alleged claims and facts.
> The duty to defend "is limited to situations
> where the pleadings have alleged claims for
> relief which fall within the terms for

9

> coverage of the insurance contract.  'Where
> pleadings fail to allege any basis for
> recovery within the coverage clause, the
> insurer has no obligation to defend.'"

Id. at 944-45 (citing Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co., 76 Haw. 166, 872 P.2d 230)).

The State Court Complaint seeks damages for the "loss of value to [the Neighbors'] residence" based on the Cheslers' alleged unreasonable interference with the light, air, and view of the Neighbors' "lot."  The Neighbors seek "compliance with the height limitation" and damages reflecting the loss of value to the residence.  This is not a "destruction of tangible property" claim.  Mitchell, Best & Visnic, Inc. v. Travelers Property Casualty Corp., 121 F. Supp. 2d 848, 854 (D. Md. 2000), analyzing Maryland law, reached a similar conclusion.  In Mitchell, the insurer had insured against "property damage," defined as "(a) Physical injury to tangible property, including all resulting loss of use of that property, or (b) Loss of use of tangible property that is not physically injured."  Id. at 849.  The district court held that there was no coverage under the policy because monetary claims dealing with "loss of enjoyment due to a potential obstructed view" pertained to "intangible property damage, not tangible property damage."  Id. at 854.  Like Mitchell and Guelich, the monetary claims against the Cheslers involve intangible property damage.

10

In <u>Wyoming Sawmills, Inc. v. Transportation Insurance Company</u>, 578 P.2d 1253, 1255 (Or. 1978), the Oregon Supreme Court examined an insurance policy insuring "property damage," also defined as "physical injury to or destruction of tangible property." The Oregon Supreme Court ruled that the policy's use of "physical" "negates any possibility that the policy was intended to include consequential or intangible damage, such as depreciation in value." <u>Id.</u> at 1256 (quotations omitted).

The State Court Complaint seeks damages for depreciation of the value of the Neighbors' residence caused by the Cheslers' home's interference with the Neighbors' light, air, and view. <u>Wyoming Sawmills</u>, like <u>Mitchell</u> and <u>Guelich</u>, teaches that, to the extent the State Court Complaint seeks monetary damages for loss of value to the Neighbors' home, it is seeking intangible damages not covered by the Homeowner's Policy. The Cheslers therefore properly conceded at the hearing on the present motion that, to the extent the State Court Complaint seeks damages for loss of value to the Neighbors' house, it fails to allege damage to "tangible property."

The Cheslers, however, say that the State Court Complaint's allegations still amount to claims of "destruction of tangible property." The Cheslers say that the destruction need not be physical destruction, as "physical" could reasonably be read as applying only when an injury to property, rather than

11

destruction of property, was in issue.  The Homeowner's Policy, after all, insures against "physical injury to or destruction of tangible property."  This court agrees that the policy is at best ambiguous as to whether "physical" modifies both "injury" and "destruction."  Reading the policy in the light most favorable to the Cheslers, this court does not construe the policy as requiring physical destruction.  Arguably, there could be a nonphysical "destruction" of something as tangible as a house by, say, a constant noxious odor.

In arguing that they are being sued by the Neighbors for destruction of tangible property, the Cheslers rely heavily on Prudential Property and Casualty Insurance Company v. Lawrence, 724 P.2d 418 (Wash. Ct. App. 1986).  Lawrence involved an insured's claims under both a homeowner's and an umbrella insurance policy.  The insureds were sued for having built their home too close to the street, obstructing their neighbor's view.  Id. at 419.  The homeowner's policy insured against claims of property damage, defined as "physical injury to or destruction of tangible property, including loss of use of this property."  Id. at 420.  The umbrella policy also covered property damage, which it more broadly defined as "damage to or destruction of tangible property . . . , [which] includes the loss of the use of the damaged or destroyed property."  Id. at 422.  Lawrence declined to base its decision on the homeowner's policy, which was more

12

restrictive because of its use of the word "physical."  Instead, the Lawrence court found coverage under the umbrella policy, which did not require physical injury to tangible property.³  Id. at 422.

Lawrence noted that language similar to the umbrella policy's (i.e., "damage to or destruction of tangible property") had "been broadly construed to encompass damage involving diminution in the value of property, even when no physical damage has otherwise occurred."  Id.  Lawrence ruled that the umbrella policy did "not require *tangible* damage to tangible property."  Id.  Lawrence said that the alleged view obstruction was covered under the broad umbrella policy.  The obstruction of the view was damage in that it "impair[ed] the beneficial use and enjoyment of tangible property."  Id.  In so ruling, Lawrence noted that "umbrella or catastrophe policies" are intended "to protect against gaps in the underlying policy" and that the insurance carrier could have easily restricted the scope of the umbrella policy's "property damage" definition by adopting the more restrictive definition used in the homeowner's policy.  Id. at 423.

Lawrence is distinguishable.  Besides not providing umbrella coverage, the Cheslers' Homeowner's Policy does not track the language of the umbrella policy in Lawrence.  The

---

³Guelich involved the same court as Lawrence.  Guelich specifically distinguished Lawrence because it was based on an umbrella policy that did not require a "physical injury."

13

Cheslers' Homeowner's Policy does not cover all <u>damage</u> to tangible property.  Rather, the Homeowner's Policy covers claims for <u>destruction</u> of tangible property.

Although <u>Lawrence</u> noted that anything that "destroys" the right to use, enjoy, and dispose of tangible property, "destroys the property itself," <u>Lawrence</u> did not hold that all interferences "destroy" such rights.  Nothing in <u>Lawrence</u> suggests that all view obstructions constitute "destruction of tangible property."  To the contrary, <u>Lawrence</u> merely characterized a view obstruction as "impair[ing] the beneficial use and enjoyment of tangible property," not "destroying" it. <u>Id.</u> at 422.  Given the umbrella policy language, the <u>Lawrence</u> court had a basis for determining that the obstruction was covered because the impairment only had to amount to "damage," not "destruction."  <u>See</u> <u>id.</u>

The Cheslers concede that, if they are seeking coverage for an "injury" to property, their policy requires that the injury be "physical."  They concede that there is no physical injury.  They instead seek coverage for claims of "destruction of tangible property."  The Cheslers argue that "destruction," which was not defined by the policy, should have its ordinary meaning of "the state or fact of being destroyed: ruin."  Opposition at 7 n.1 (citing <u>Merriam-Websters Online Dictionary</u>,

14

http://209.161.37.11/dictionary/destruction;

http://209.161.37.11/dictionary/destroy).

   The problem with the Cheslers' argument is that the State Court Complaint does not allege that the Neighbors' tangible property has been "destroyed."  Rather, it alleges that the Cheslers' home "unreasonably interferes" with the Neighbors' lot's right to light, air, and view.  See State Court Complaint ¶ 14 ("The building . . . unreasonably interferes with the light, air and view of Plaintiffs' Lot 91.").

   Applying the "complaint allegation rule" discussed in Burlington, 383 F.3d at 944-45, this court need not determine whether the destruction of a small part of the Neighbors' House (such as a window fixture or a view from a single window) would satisfy the "destruction" prong of "property damage" as defined in the Homeowner's Policy.  The Neighbors allege only an "impairment" of the Neighbors' lot.  They do not allege destruction, ruin, or anything analogous.  It is also notable that the Neighbors allege impairment of their "lot," not of a small portion of the house or the view from a single window.  The "tangible property" thus appears to be the Neighbors' "lot," and any "destruction" would have to affect the "lot."  The State Court Complaint does not contain the allegations necessary to

15

bring the claims under the Cheslers' Homeowner's Policy.[4]  This court therefore concludes that the Hawaii Supreme Court would likely determine that there is no possibility of coverage under the Cheslers' Homeowner's Policy.[5]

V.      CONCLUSION.

For the foregoing reasons, summary judgment is granted in favor of Allstate.  This disposes of all claims and all parties in this action.  Accordingly, the Clerk of the Court is directed to enter judgment in favor of Allstate and to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 14, 2007.



_____
Susan Oki Mollway
United States District Judge

---

[4]The gravamen of the Neighbors' complaint is that the Cheslers built their house one foot too high.  The degree of interference with the Neighbors' lot does not create a genuine issue of material fact as to whether that interference amounts to "destruction of tangible property" such that summary judgment would be precluded.  This court does not rely on that particular measurement, noting instead that, whatever the measurement, it allegedly only "interferes with," rather than "destroys," the light, air, and view of the Neighbors' "lot."

[5]The court need not reach Allstate's arguments that this case involves intentional acts (not an occurrence) and contract claims that are excluded under the Homeowner's Policy.

Allstate Ins. Co. v. Chesler, et al., CIVIL NO. 06-00246 SOM/LEK; ORDER GRANTING MOTION FOR SUMMARY JUDGMENT